## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ANTHONY QUINTANA AND NICOLE J. )
QUINTANA, On Behalf of Themselves     )
And All Others Similarly Situated,     )
                                       )  No.
                Plaintiffs,     )
                                       )
     v.                         )
                                       )   Jury Trial Demanded
FORD MOTOR COMPANY,                    )
                                       )
                Defendant.     )

## CLASS ACTION COMPLAINT

## NATURE OF THE ACTION

1.      Plaintiffs, Anthony and Nicole J. Quintana ("Plaintiffs" or "the Quintanas"), bring

this action on behalf of themselves and all other similarly situated owners in the United States of

model year 2002 - 2005 Ford Explorer automobiles ("the subject vehicles").  The subject

vehicles contain defective body panels at their rear liftgate area that makes the vehicle rear body

panel crack.  Defendant Ford Motor Company ("Ford") has refused to correct the defect or to

repair the cracked panels of the subject vehicles.  Plaintiffs, are citizens of Illinois and owners of

an affected Ford Explorer whose liftgate panel has cracked, bring this action against Ford for its

violations of the Michigan Consumer Protection Act, the Illinois Consumer Fraud Act, the

common law of unjust enrichment to seek monetary, declaratory judgment, equitable, and

injunctive relief, as well as attorneys' fees and costs, on behalf of the class and subclass pleaded

within this Class Action Complaint.

**JURISDICTION AND VENUE**

2.      This Court has subject matter jurisdiction over the claims asserted in this action

pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the matter is a putative

class action involving a class of persons of diverse citizenship from Defendant's citizenship, and

for which the total recovery sought exceeds $5 million.  This Court has personal jurisdiction over

Defendant because Ford has a large manufacturing plant in Chicago and transacts significant

business within this judicial district, including advertising, offering for sale, selling, and

servicing the Ford vehicles that are the basis of this lawsuit.

3.      Venue is proper in this district pursuant to 28 U.S.C. §1391 because Plaintiffs

reside in this judicial district, their vehicle is located and exhibited the alleged defect within this

judicial district, and as such, Plaintiffs sustained the damages complained of within this judicial

district.

**PARTIES**

4.      Plaintiffs are residents and citizens of Illinois.  They are the owners of a 2005

Ford Explorer Limited vehicle.  On or about August 2007, Mr. Quintana noticed that a crack had

developed along the rear liftgate panel of his Ford Explorer, spanning approximately from the

rear liftgate window down to well below the Ford emblem on the rear liftgate panel.  Attached

hereto as Exhibit 1 are true and correct copies depicting the cracking to the rear panel of

Plaintiffs' vehicle.[1]  On September 2007, Plaintiffs brought their vehicle to a Ford-authorized

dealer.  Rather than offering redress for the broken liftgate panel, the dealer denied the existence

of any defect either to Plaintiffs' liftgate panel or the existence of any common defect plaguing

similar Ford Explorer vehicles, and declined to repair or replace the cracked panel.   Although

_____

[1] In the interests of preserving Plaintiffs' privacy, the license tag number has been redacted from the pictures .

2

Plaintiffs believed the dealer's representation that no such defect existed or was known to Ford, upon further investigation, Plaintiffs saw several Ford Explorer vehicles in their vicinity that exhibited this same damage.  Since then, as detailed below and in the accompanying exhibits, Plaintiffs have become aware that, in fact, contrary to the Ford dealer's representations and to Ford's silence on the matter, a whole universe of aggrieved Ford Explorer owners exists that is and has complained about the same cracking to the liftgate panel of the 2002-2005 Ford Explorer vehicles.

5.       Ford Motor Company is a corporation organized under the laws of the State of Delaware, and has its principal place of business in Dearborn, Michigan.  Ford is one of the world's largest automobile manufacturers, and is the manufacturer of the Ford Explorer, one of the nation's most popular sport utility vehicles.

## THE FORD EXPLORER AND ITS DEFECTIVE LIFTGATE PANEL

6.       The Ford Explorer is one of the nation's most popular sport utility vehicles, and has been in production since model year 1990.  As a sport utility vehicle, the Ford Explorer has a rear liftgate whose top portion encases a glass window, and whose remaining lower portion is formed by an exterior body panel.

7.       Through the years, the Ford Explorer has undergone several evolutions of design. Particular model years sharing generally the same design or manufacture are commonly referred to within the industry as being the same "generation" Ford Explorer.  Ford Explorers for the model years 2002-2005 are of such a similar design and manufacture, and are recognized and often referred to by Ford and within the industry as being the "Third Generation" Ford Explorer.

8.      Within the automotive industry and trade, barring a vehicular collision, vehicle body panels are expected to and do normally maintain their structural integrity for the lifetime of the vehicle, and are not reasonably expected to develop cracks that are readily visible.

9.      For model years 2002-2005, the Ford Explorer has been designed and manufactured with a latent defect, pursuant to which the rear liftgate panel of the vehicle is not structurally strong enough to remain intact for the lifetime of the vehicle, as is and would be expected by consumers and the trade.  Instead, as a direct result of this latent defect, which Ford has failed to disclose, the Ford Explorer's rear liftgate panel cracks suddenly, without warning or apparent cause, leaving a visible crevice that spans approximately from the glass window area above the liftgate panel and extending down below the "Ford" emblem located approximately in the center of the liftgate panel, and ending above the license plate area of the vehicle.

10.      Repair and/or replacement of the cracked liftgate panel involves several hundred dollars or more of parts and labor.  Worse yet, because of the structural defect of the panel and/or its assembly to the vehicle, affected owners often find that even after replacing the defective panel with a new one, the replacement panel later ends up cracking, as well.

11.      The defect at issue, entailing the structural integrity of the panel itself or its assembly to the rest of the vehicle, is a latent one that would not and could not be reasonably discoverable by a consumer through reasonable inspection of the vehicle prior to its purchase. The cracking resulting to the liftgate panel as a result of this defect typically arises after several months or years of ownership.

12.      Ford has known about the defect plaguing the 2002-2005 model year Ford Explorer liftgate panels, but has omitted mention or disclosure of the defect to consumers, and despite Ford's knowledge of this defect, it continues to deny any responsibility for the damage

caused by it. Instead, Ford has uniformly omitted any mention, and failed to disclose the subject

defect to consumers.

13.     The prevalence of the defect and its manifestation is evidenced by even a cursory

review of the Internet. In several automotive-related websites and message boards, owners of

affected Ford Explorers have lodged their complaints and detailed their experiences. Ford has

turned a deaf ear to all.

14.     In one such automotive-related website and message board,

www.carcomplaints.com, over 420 separate complaints from Ford Explorer owners experiencing

the cracked liftgate panel have been posted. A true and correct copy of that message board is

attached hereto as Exhibit 2. The postings are telling—one aggrieved owner, for example,

details that:

> This is the SECOND time this rear panel under the back window has cracked. Yes, the
> first time it was STILL covered under warranty and they repaired it at no charge. This
> time they WILL NOT REPAIR IT AT NO CHARGE. I was told that it would be
> approximately $300.00 TO repair and that it would happen again. They also added that
> FORD "is not doing anything" with it.

Ex. 2 , at Message No. 411 (posted by Stacey V., owner of Ford Explorer in Harahan , LA with 50,000

miles).

15.     That experience is hardly anomalous. Another owner posted a similar experience:

> It just really angers me that this is the second 03 Explorer I have owned that has had
> the same problem!! And I drive a lot and within the past few months I have seen at
> least 15+ other Explorers with the same problem! If there are so many vehicles that
> this is happening to why can't Ford just fix this!! It is obviously a manufacturer
> DEFECT!!!!

Ex. 2, at Message No. 403 (posted by Shannon W., owner of Ford Explorer with 108,000 miles

in Joshua, TX).

16.     Other owners detail the lack of response they received from Ford's corporate

office when confronted with the complaints:

> Problem reported to Ford Motor Co. Consumer affairs office. Was told there was no plan to recall or give Ford customers any help. I am retired and don't have the funds to pay for a problem that was caused by Ford design. They need to take care of this problem. I guess I am a member of the Cracked Ford Tailgate Club.

Ex. 2, at Message No. 398 (posted by Gene T., owner of Ford Explorer with 70,250 miles in Bartlett, TN).

17.     That same sentiment as to Ford's indifference to the defect was also voiced by another aggrieved owner who also received no redress from Ford.  In fact, as detailed by this owner, the problem is also that when an owner replaces the cracked panel, the replacement panel is still defective, such that it is likely to crack again:

> Called Ford about the problem of cracked panel below the rear window, a common problem for Explorers. Ford confirmed the problem, but when I asked if the panel had been corrected, they said no changes had been made. So Ford is selling a defective panel to repair a defective panel. Volvo and Subaru had the same method of gluing on the panel to rear window, but they don't have a problem. Ford had produced a inferior product in the panel and refused to correct so that if you pay yourself to have the panel fixed, there is a good chance it will happen again. That why there is so many complaints. Bad engineering.

Ex. 2, at Message No. 395 (posted by David S., owner of Ford Explorer with 55,000 miles in Centennial, CO).

18.     As the diverse location of the owners posting their complaints reveal, the manifestation of the defect is not limited to one part of the country.  Nor is the cracking of the liftgate panel restricted to vehicles in locales with cold weather—owners, such as the following one residing in the warm weather of southern Florida—have experienced the same panel cracking:

> Sent an email to Ford Customer Relationship Center, telling them about the cracked rear panel and how I found online quantity of similar complaint, even some mentioning that Ford was fixing it and only charging $100 to the customer. I also explained that it is my 4th Ford vehicle since 2000. They

6

> responded with a pre-written generic email stating there is no warranties, Field
> Service Action/Customer Satisfaction Programs on my vehicle....

Ex. 2, at Message No. 369 (posted by Christian G., owner of Ford Explorer with 75,000 miles in

Plantation, FL)

19.     The outcry from Ford Explorers is so pronounced that, in light of the prevalence

of the defect and Ford's inaction, some owners have taken to social media and other Internet

resources like YouTube to document their experience and connect with other similarly aggrieved

owners:

> My problem is the same as many 2003 Ford Explorer owners -- cracked panel on
> the tailgate. I've had no luck in getting it repaired by Ford, and I've tried the
> corporate office and our local Ford dealership in Owensboro, KY, which is
> Champion Ford.
>
> So, my next step is this: I'm starting a Facebook group encouraging unhappy
> Explorer owners to join and post photos of their cracked back panels. I'm then
> doing a YouTube video about the problem and hope that it goes viral.

Ex. 2, at Message No. 329 (posted by Karen L., owner of Ford Explorer with 70,000 miles in

Philpot, KY).

20.     In fact, a Facebook page has been launched for owners of Ford Explorers with the

defective liftgate panel.

21.     The foregoing are but a small sampling of thousands of public complaints against

Ford about the subject defect that have been posted online and through other media.

22.     This is neither the first lawsuit nor the first class action complaint that Ford has

faced in connection with the defective liftgate panel of the 2002-2005 Ford Explorer.  In late

2010, two owners of a 2003 Ford Explorer whose liftgate panel also cracked filed a class action

lawsuit against Ford in the United States District Court for the Southern District of California,

No. 10-cv-02648-DMS.  A nearly identical class action complaint was filed last year against

Ford in the United States District Court for the Eastern District of Michigan, No. 11-cv-11092-RHC.  Both suits were voluntarily withdrawn without prejudice within a couple of months of their filing and prior to Ford filing any response, thereby suggesting that an individual settlement had been reached.

**CLASS ACTION ALLEGATIONS**

23.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this action as a class action on behalf of all owners within the United States of 2002-2005 model year Ford Explorer vehicles (the "Class").   Excluded from the Class are all judicial officers assigned to this case, as well as all federal and state employees, and the employees of Defendant or its corporate affiliates, individuals who allegedly have suffered personal injuries as a result of the alleged defects, and any other persons from whom Ford has received a written release covering any of the claims asserted in this Class Action Complaint.

24.     In addition to the foregoing class definition, applicable to Counts I and III of this Class Action Complaint, for Count II, as detailed below, Plaintiffs also seek to certify a subclass consisting of owners within the State of Illinois of the foregoing vehicles.

25.     Although the exact number of class or subclass members is presently unknown, Plaintiffs are informed and believe and thereon allege that over 1 million Ford Explorer vehicles were sold for model years 2002-2005, and therefore the class as well as the subclass will number at least in the thousands of consumers, thereby making joinder impracticable.

26.     Class certification is also appropriate because there are questions of fact or law that are common to the class members.  Among these common questions of fact and/or law are:

a.  Whether Defendant is responsible for injecting allegedly defective vehicles in to the United States' stream of commerce;

b.  Whether the subject vehicles are defective, and, if so, the nature of the defect;

c.  Whether Defendant's conduct violates the Michigan Consumer Protection Act, and/or the Illinois Consumer Fraud Act,;

d.  Whether Defendant has been unjustly enriched at the expense of the class members;

e.  Whether class members are entitled to the relief sought, and if so, the proper scope of such relief, including, but not limited to the proper measure of damages.

27.     Plaintiffs' claims are typical of the claims of the absent class members in that Plaintiffs, like all the absent members of the Class, claims that their Ford Explorer vehicle has a defectively designed and/or manufactured liftgate panel, and that Ford failed to disclose this latent defect to her, thereby causing her to sustain injury and damages.  Plaintiff is a member of the class and subclass she seeks to represent, and the claims Plaintiff advances on her own behalf are identical to the claims asserted on behalf of the class.

28.     Plaintiffs  are adequate class representatives in that, as a member of the Class and subclass, and as  current owners of an allegedly defective Ford Explorer vehicle with a cracked liftgate panel, their interests are entirely aligned with those of the class and subclass.  There are no individual conflicts that prevent Plaintiffs from adequately representing the class or subclass. Plaintiffs have retained competent counsel experienced in class action litigation.

29.     Class certification is proper because common questions of fact and law predominate over questions that may affect only individual members of the class or subclass.

The subject vehicles are manufactured on an assembly line setting, subject to a common design and manufacturing plan, such that evidence of a defect in the liftgate's design or manufacture would apply across the board to all the subject vehicles. Common questions of fact or law, therefore, predominate over the entire class membership, as would evidence of Defendant's course of action, knowledge of the alleged defect, and any alleged concealment thereof.

30.     A class action presents a superior form of adjudication over individual litigation. The costs of litigating this action against a large and sophisticated defendant like Ford in comparison to the recovery or relief sought would make individual litigation impracticable. In addition, forcing individual litigation would risk the result of inconsistent rulings with respect to Defendant's duties owed to the various vehicle owners.

31.     A class action is manageable. The proposed class represents an identifiable community that can be readily identified, and the relief sought is one that can be overseen by the Court.

32.     Ford has fraudulently concealed its knowledge and the existence of the defect plaguing the liftgate panel of the subject vehicles. Not only has Ford failed to disclose this defect, but it has also instructed its dealers to deny the existence of this common defect to inquiring consumers who seek or would otherwise seek redress from Ford. As a result of this fraudulent concealment, any limitations period that would otherwise be applicable to any of the claims alleged herein were tolled during the period of this fraudulent concealment. In addition, the limitations periods for any claim alleged here was also independently tolled during the time during which putative class actions were pending against Ford that complained about the defect to the subject vehicles.

## COUNT I

## (VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT, M.C.L.A. § 445.901 *et seq.*)

## (ON BEHALF OF A NATIONWIDE CLASS)

33.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-33 and adopt same as though fully set forth herein.

34.     Plaintiffs, the owners of a 2005 Ford Explorer with a defective liftgate panel, are consumers within the meaning of the Michigan Consumer Protection Act, M.C.L.A. § 445.901 et seq.

35.     Ford's advertising, offering for sale, sale, and servicing of the subject vehicles amounts to the conduct of trade and/or commerce within the meaning of M.C.L.A., § 445.903(1).

36.     At all times relevant, Ford has uniformly omitted any disclosure of the defect plaguing the liftgate panels of the subject vehicles.  The defect plaguing the liftgate panel of the 2002-2005 model-year Ford Explorer is a material fact, whose omission would tend to deceive reasonable consumers.

37.     Ford's uniform practice of failing to disclose the defect plaguing the liftgate of the 2002-2005 Ford Explorers amounts to a deceptive and/or unconscionable business practice in violation of the Michigan Consumer Protection Act in that it amounts to, at least, a "[f]ail[ure] to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer." M.C.L.A., § 445.901(1)(s).

38.     Ford's violation of the Michigan Consumer Protection Act has injured Plaintiffs and the members of the class and subclass.  Those class members who, like Plaintiffs, have experienced a cracked liftgate panel have been damaged by being forced to expend money to repair and/or replace the cracked panel.  In addition, even those class members whose vehicles

have not yet experienced the cracked panel, have sustained a diminution in value of their

vehicles, as now that the defect has become public, the value of the subject vehicles has and will

decline in order to account for the defect plaguing the vehicle.

## COUNT II

### (VIOLATION OF ILLINOIS CONSUMER FRAUD ACT, IL 815 ILCS, §505/1 *et seq*.)

### (ON BEHALF OF A SUBCLASS OF ILLINOIS OWNERS OF
### 2002-2005 FORD EXPLORER VEHICLES)

39.     Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-33

and adopt same as though fully set forth herein.

40.     Ford's failure to disclose, as well as its intentional and fraudulent omission from

any of its advertising and sales materials or brochures of the subject vehicles' defect, amounts to

an unconscionable commercial practice, deception, fraud, false pretense, or the knowing,

concealment, suppression, or omission of any material fact with intent that others rely upon such

concealment, suppression or omission, in connection with the sale or advertisement of the

subject vehicles, thereby violating the Illinois Consumer Fraud Act.

41.     Among other things, Ford knew that the subject vehicles had a defect that would

cause their liftgate panels to crack before their expected useful life, and intentionally concealed

that information from subclass members with the purpose of maximizing profit, thereby

independently violating the Illinois Consumer Fraud Act.

42.     Plaintiffs  and the Illinois subclass members have suffered loss and/or injury as a

result of Defendant's violations of the Illinois Consumer Fraud Act.  As a result of Ford's

violations of the Illinois Consumer Fraud Act, Plaintiffs had to expend significant money to

cover the cost of replacing and/or repairing the cracked liftgate panel in their vehicle.  Further,

Plaintiffs and all of the Illinois subclass members have sustained a diminished value of their

vehicles as a result of the subject defect because, once the defect is disclosed as is being done through the filing of this lawsuit and as has been done through the repeated Internet postings, the resale value of the vehicle has been and will be negatively impacted as a specific and predictable result of the subject defect.  In addition, each of the Illinois subclass members has suffered a loss or injury because none of them has received the benefit of their bargain in connection with their purchase of the subject vehicles.  Instead, each received a vehicle bearing a latent defect in its liftgate panel.

## COUNT III

### (VIOLATION OF THE COMMON LAW OF UNJUST ENRICHMENT)

### (ON BEHALF OF A NATIONWIDE CLASS)

43.    Plaintiffs incorporate by reference the allegations contained in Paragraphs 1-33 and adopt same as though fully set forth herein.

44.    Plaintiffs and the Class are each owners of 2002-2005 mode- year Ford Explorer automobiles whose liftgate panels are defective in the manner detailed herein.

45.    By purchasing a Ford-branded automobile, Plaintiffs and the class members conveyed monetary as well as intangible benefits on Ford, and Ford appreciated and was enriched by those benefits.

46.    As a result of Ford's unjust and inequitable conduct alleged herein, including its distribution of defective automobiles into the United States' stream of commerce, as well as its failure to properly remedy those defects, it would be unjust and inequitable for Defendant to be permitted to retain these benefits.

47.    Plaintiffs and class members are, therefore, entitled to and hereby pray for a judgment of restitution, ordering Defendant to disgorge its ill-gotten gains to the class members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the class and subclass members pray for judgment against Defendant as follows:

a) That the Court determine that this action may be litigated as a class action, and that Plaintiffs and their counsel be appointed class representatives and class counsel, respectively;

b) That the Court enter judgment against Defendant and in favor of Plaintiffs, the class and/or the subclass on all counts;

c) That Defendant be required by this Court's Order to create a common fund to remedy the defects alleged herein, and to compensate all members of the class and subclass for their damages and injuries, as well as to compensate Plaintiffs' counsel for their attorneys' fees and cost of suit; and, that Defendant be ordered to bear the cost of notice to the absent class members, as well as of the administration of this common fund;

d) That damages and/or restitution or disgorgement be awarded to each plaintiff and class or subclass member according to proof;

e) That the Court award Plaintiffs and the members of the class and subclasses punitive damages assessed against Defendant;

f) That Plaintiffs and the class members be awarded all such other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to  Fed. R. Civ. P.  38(b), Plaintiffs request a jury trial.

Dated: March 27, 2012

Plaintiffs,


By: s/*Marvin A. Miller*
Marvin A. Miller
Lori A. Fanning
Andrew Szot
MILLER LAW LLC
Suite 2910
115 S. LaSalle Street
Chicago, IL  60603
(312) 332-3400
Facsimile: (312) 676-2676
email: mmiller@millerlawllc.com
email: lfanning@millerlawllc.com
email: aszot@millerlawllc.com

Roy A. Katriel
THE KATRIEL LAW FIRM
12707 High Bluff Drive, Suite 200
San Diego, CA 92130
Telephone: (858) 350-4342
Facsimile: (858) 430-3719
e-mail: rak@katriellaw.com

Attorneys for Plaintiffs